IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN REDER,

                Plaintiff,

     v.

UNITED STATES POSTAL SERVICE,
Megan J. Brenner, Postmaster General of
the United States Postal Service,

                Defendant.

No. 3:15-cv-01212-HZ

OPINION & ORDER

Glenn N. Solomon
1001 SW Fifth Ave., Suite 1414
Portland, OR 97204

     Attorney for Plaintiff

Kevin C. Danielson
Assistant United States Attorney
U.S. Attorney's Office, District of Oregon
1000 SW Third Ave., Suite 600
Portland, OR 97204

     Attorney for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Defendant United States Postal Service (USPS) moves for summary judgment in this age discrimination case brought by Plaintiff Steven Reder. Plaintiff claims that he was hired at a lower salary than younger, similarly situated employees of Defendant. The Court considered the parties' briefs and heard argument on December 2, 2016. Defendant's motion for summary judgment is granted.

## BACKGROUND

Plaintiff has been employed by Defendant as an Operations Industrial Engineer (OIE) since August 24, 2013. Compl. ¶ 2, ECF 1. At the time Plaintiff was hired, he was 56 years old. Id. Plaintiff has a master's degree in material science engineering. Reder Depo. 5:12-13, ECF 13-1.

Prior to working for Defendant, Plaintiff worked as an engineer in the high-tech electronics industry, where he manufactured semiconductors for approximately 27 years. Reder Depo. 6:3-5, ECF 19. During his career in the semiconductor industry, Plaintiff earned 21 patents and published at least 6 technical articles. Id. at 8:2-4. Then, he worked for about 6 years in the solar industry. Id. at 6:10. When the company he worked for went out of business, Plaintiff had difficulty finding another job. Id. at 19:22-25. He looked for months before he was able to obtain the job with Defendant. Id.

OIEs at USPS use industrial engineering knowledge and skills to improve service and cost performance in USPS through direct involvement in mail processing operations. DeWolfe Decl. Ex. 1 at 2, ECF 14-1. OIEs are required to have a college degree in an accredited engineering program. Id.

2 – OPINION & ORDER

I.      **Plaintiff's job interview and starting salary**

In March of 2013, USPS in Portland, Oregon, posted three openings for the position of OIE. DeWolfe Decl. ¶ 8, ECF 14. Plaintiff applied for all three positions. Id. at ¶ 9. The posted annual salary range for each OIE position was $53,305-$89,899. Id. at ¶¶ 8, 10.

Approximately 29 individuals applied for the three positions. Id. at ¶ 11. Richard DeWolfe, plant manager of the Mount Hood Processing and Distribution Center, helped to select 15 applicants who were interviewed on the telephone. Id. at ¶ 11. Following those interviews, Mr. DeWolfe decided who would be offered jobs. Id. at ¶ 12. According to Mr. DeWolfe, he did not know the ages of the people to whom he offered jobs and he did not discuss their age during their interviews. Id. at ¶¶ 13, 14, 18, 19. Plaintiff's high school graduation date was on his job application; however, Mr. DeWolfe testified that he only gave each applicant's educational background a "cursory look, at best" because there was an initial screening process that ensured that every application Mr. DeWolfe received met the minimum educational qualifications. Solomon Decl. II at 22:1-25:25, ECF 20.

Mr. DeWolfe's first choice, "DG," was offered the job at the starting salary of $53,305. Id. at ¶ 13. However, DG asked for a salary of $89,000 and, when Mr. DeWolfe did not counter-offer, DG declined to take the job. Id. DG was approximately 42 years old. Id.

Mr. DeWolfe then offered the job to "OA." Id. at ¶ 14. OA declined the offer before Mr. DeWolfe could even discuss a starting salary with him. Id. Mr. DeWolfe declares that he was prepared to offer him a starting salary of $53,305. Id. OA was approximately 34 years old. Id.

Mr. DeWolfe also offered the job to an individual with the initials "KR," with the starting salary of $53,305. Id. at ¶ 20. KR lived in California at the time and, before accepting the salary, he asked to do cost-of-living comparisons. Id. KR ended up negotiating for a higher salary. Id.

3 – OPINION & ORDER

Mr. DeWolfe was given approval to offer him $54,891, which KR accepted. Id. KR was 47 years old. Id.

At about the same time as the offer was made to KR, Mr. DeWolfe offered the job to Plaintiff. Id. at ¶¶ 15, 20. Mr. DeWolfe offered Plaintiff a starting salary of $53,305, the lowest salary on the pay schedule and the same salary that had been initially offered to DG and KR. Id. Both parties agree that Plaintiff did not try to negotiate for a higher salary. Id.; Reder Depo. 20:14-16, ECF 13-1. However, they disagree on the specifics of the conversation between Mr. DeWolfe and Plaintiff.

Mr. DeWolfe declares that Plaintiff accepted Mr. DeWolfe's offer and said he "was just happy to have a job." DeWolfe Decl. ¶ 15. According to Mr. DeWolfe, Plaintiff's acceptance of the minimum starting salary stopped all further discussions about his salary. Id. On the other hand, in his deposition, Plaintiff testified that:

> I believe I asked, was there any negotiation about the salary, and he said this is the salary that we're offering. And so I—at that point, I left it at that. There was absolutely no discussion regarding—I didn't want to jeopardize—if he had other candidates, I didn't want to jeopardize losing the job offer. I'd been looking for months and months, and had not had one—I think not one offer or even inquiry to come in for a job interview.

Reder Depo. 19:15-25, ECF 19.

## II.     Plaintiff's salary increases

At USPS, salary increases for OIE positions, which are part of the Executive and Administrative Schedule (EAS), are determined by the National Performance Assessment Program and the Pay-for-Performance Program. DeWolfe Decl. ¶¶ 8, 22. Salary increases are based on the overall performance of the facility where the employee works, as well as the overall performance of the area where the facility is located. Id. at ¶ 22. Raises are not correlated with the work performance of individual employees. Id. According to Mr. DeWolfe's declaration,

since Plaintiff was hired, Plaintiff's salary has increased by the same percentage as other EAS employees at his facility. Id. at ¶ 24. For the past few years, this facility has been rated with a score that has only allowed minimum or no raises for its employees. Id. at ¶ 23.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support

his claim than would otherwise be necessary. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**DISCUSSION**

Plaintiff alleges that he faced discrimination in pay due to his age.[1] Plaintiff contends that he was given a lower starting salary than younger OIEs who had less experience and education because Mr. DeWolfe took advantage of "the well known difficulty older workers have finding employment." Pl.'s Opp. 2, ECF 18. Because Plaintiff fails to establish that there is a material issue of fact as to whether Defendant's legitimate non-discriminatory reason for offering him a lower salary than another OIE was pretextual, the Court grants Defendant's motion for summary judgment.

Under the Age Discrimination in Employment Act (ADEA), "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in the United States Postal Service . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a)**.** The parties agree that Plaintiff's ADEA claim is based on circumstantial evidence and, thus, is analyzed under the framework of <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973). See <u>France v. Johnson</u>, 795 F.3d 1170, 1173 (9th Cir. 2015), <u>as amended on reh'g</u> (Oct. 14, 2015); <u>Diaz v. Eagle Produce Ltd. P'ship</u>, 521 F.3d 1201, 1207 (9th Cir. 2008) (holding that the <u>McDonnell Douglas</u> framework applies to ADEA claims). Therefore, Plaintiff must first make a *prima facie* case of age discrimination. <u>Shelley v. Geren</u>, 666 F.3d 599, 608 (9th Cir. 2012). If Plaintiff can establish a *prima facie* case, the burden of production shifts to Defendant to articulate a non-discriminatory reason for the challenged action. <u>Id.</u> If Defendant meets that

---

[1] Plaintiff's Complaint also alleged that he "has been given more challenging assignments than his younger, often less qualified, comparators beginning from in [sic] August of 2013 and lasting through the date of the filing of this Complaint." Compl. ¶ 9. However, Plaintiff conceded this issue at oral argument. See <u>Bias</u>, 508 F.3d at 1219 (finding no genuine issue of material facts in dispute where the plaintiff failed to present any evidence in opposition to the defendant's motion for summary judgment).

6 – OPINION & ORDER

burden, then Plaintiff must establish that there is a material issue of fact as to "whether the employer's purported reason is pretext for age discrimination." Id.

**I.**     *Prima facie* **case**

In order to establish a *prima facie* case of age discrimination, Plaintiff must show that (1) he is at least 40 years old; (2) he was performing his job in a satisfactory manner; (3) he experienced an adverse employment action; and (4) he was treated differently than a similarly situated employee who did not belong to the same protected class. Delos Santos v. Potter, 371 F. App'x 746, 747–48 (9th Cir. 2010) (citing Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006)). Here, Defendant concedes that Plaintiff establishes the first two elements of his *prima facie* case.

Plaintiff presents statistical evidence that he alleges gives rise to an inference that Defendant pays younger OIEs more than their older comparators. He also argues that the evidence shows that Plaintiff is one of the lowest paid OIEs in USPS and that the largest age group making more money than him is substantially younger.

Plaintiff also identifies three local comparators, who are allegedly younger than him yet make a higher salary. Finally, he identifies two local comparators who are close to his age and are among the lowest paid OIEs in USPS.

   a.   Evidentiary Objections

Defendant objects to the following three documents related to OIE salaries that were created by Plaintiff and submitted as part of Plaintiff's response to the motion for summary judgment: (1) "Salary Data Listed from Smallest to Largest"; (2) "Salary vs. Age"; and (3) "Data Analysis." Solomon Decl. I at 14-15, ECF 19. According to Defendant, these documents should not be considered in the motion for summary judgment because they are hearsay and lack a

proper foundation because they were not created by an expert. In addition, Defendant contends that the documents were not based on sufficient facts or relevant variables between comparable individuals.

As discussed below, the Court agrees with Defendant that Plaintiff's documents fail to account for relevant variables and, thus, are viewed skeptically by this Court. Pottenger v. Potlatch Corp., 329 F.3d 740, 748 (9th Cir. 2003) (treating the plaintiff's statistical analysis "skeptically" because, while it showed a statistically significant relationship between the plaintiff's age and the company's reduction in force, the statistics failed to account for other relevant variables). Such analysis, however, goes to the weight given to the documents, not their admissibility.

At the summary judgment phase, the Court focuses on the admissibility of the evidence's contents, rather than on the admissibility of its form. Fraser v. Goodale, 342 F.3d 1032, 1037 (9th Cir. 2003) (considering the content of the plaintiff's diary in a motion for summary judgment because it could be presented in an admissible form at trial). As one court explained:

> "If the movant's materials are capable of being put in a form which is admissible at trial, the need for summary judgment materials to be trustworthy and reliable has still been satisfied." Brunet, Parry & Redish, supra, § 8.6. Thus, hearsay evidence may be considered at the summary judgment phase, as long as it could be presented in an admissible form at trial. Singleton v. Lopez, 577 Fed. Appx. 733, 736 (9th Cir. 2014).

Gray v. Suttell & Associates, 123 F. Supp. 3d 1283, 1294–95 (E.D. Wash. 2015).

Here, Defendant does not challenge the admissibility of the underlying data upon which Plaintiff relies in creating his charts. Therefore, the Court will consider Plaintiff's charts in this motion for summary judgment.

///

8 – OPINION & ORDER

   b. Statistical evidence

The documents prepared by Plaintiff do not, however, demonstrate what Plaintiff contends they demonstrate. First, Plaintiff fails to account for relevant variables. Second, Plaintiff selectively summarizes the data.

The data obtained by Plaintiff from Defendant in discovery lists each of the 181 OIEs hired since 2013 and each of those OIEs' age, salary, and higher education degree. Reder Depo. 57, ECF 19. The Court guesses that the listed salary is what each OIE was making at the time that the data was disclosed to Plaintiff. However, the Court is unable to tell from the data, Plaintiff's deposition testimony, or his brief whether or not this is an accurate assumption. Further, the Court does not know on what date the data was given to Plaintiff. The data additionally fails to account for relevant variables such as the employees' experience, work location, cost of living, and the job market. Plaintiff conceded at oral argument that he fails to present any data that accounts for these variables.

Plaintiff converted the data obtained from Defendant to a chart that purportedly shows that his salary is currently the lowest salary made by an OIE in USPS. Id. at 57-58; Solomon Decl. 13, ECF 19. Plaintiff also claims that his charts show that the Portland USPS hired the lowest-paid OIEs in USPS because Portland USPS hired three OIEs at $55,930. Id. According to Plaintiff, the ages of those three OIEs were 54, 56, and 57. Id. In Plaintiff's deposition, however, he testified that these three OIEs were offered the minimum salary of $53,910. Again, the Court would be guessing at an explanation for this discrepancy and, without the names of these OIEs, the Court would be guessing at who they are based on the data provided by Defendant.

By looking at the data produced to Plaintiff by Defendant, there appear to be 18 OIEs who earn less than $60,000. Of those 18, 13 are below the age of 40, 1 is between the age of 40-

50, and 4 are over the age of 50. If anything, the data suggests that most of the lowest paid people within USPS are below the age of 40. The second chart that Plaintiff submits supports that conclusion and Plaintiff did not dispute that fact at oral argument. See Solomon Decl. 14, ECF 19.

Looking at the data in a different way, the Court sees that there are 31 OIEs over the age of 50 at USPS. Solomon Decl. I at 16-19, ECF 19. Of those 30 people, 10 earn $55,000-$65,000; 13 earn $65,000-$75,000; 5 earn $75,000-$85,000; and 3 earn over $85,000. Id. By this Court's calculations, the average salary for USPS OIEs over the age of 50 is $71,233. When compared to Plaintiff's assertion that the average salary of all USPS OIEs is $70,775, the Court does not find the discrepancy remarkable. Of course, there are many variables that could explain these results or that could create an inference of discrimination based on these results. However, it is Plaintiff's burden to present this information to the Court and Plaintiff has failed to meet his burden.

At most, Plaintiff successfully demonstrates that he earns, and therefore was likely hired at, one of the lowest salaries among the OIEs in USPS hired since 2013. He perhaps also shows that there were two other OIEs hired by Portland USPS who are over the age of 50 and earn among the lowest salaries in USPS. This showing alone is insufficient. For example, in the absence of any data showing all of the hires made by Portland USPS in particular, as opposed to USPS generally, there is no way for the Court to know if it is significant that three OIEs in Portland are among the lowest paid at USPS.

In sum, the statistical evidence submitted by Plaintiff is problematic. On its own, the evidence submitted by Plaintiff suggests that an inference of discrimination is not warranted. Nevertheless, as explained below, Plaintiff establishes his *prima facie* case.

    c.  Comparators

In Plaintiff's Opposition Brief, he contends that he has identified three local comparators, "Holman, Childs, and Rivas," who are substantially younger than him and less qualified, yet make a higher salary. Plaintiff's argument, however, is only somewhat supported by any evidence.

The only information regarding Andrew Holman is presented in Plaintiff's deposition, where he testified that Mr. Holman was hired before 2013 in another location of USPS and then transferred into Portland. Reder Depo. 38:9-20; 58:20-59:2, ECF 19. Plaintiff thinks that Mr. Holman was in his mid-twenties and had five years of experience and a bachelor's degree, yet made more money than Plaintiff. Id. According to Plaintiff, Mr. Holman earned $72,000 a year. Id. There is no other evidence regarding Mr. Holman's age, experience, or salary. Most importantly, there is no evidence regarding Mr. Holman's starting salary or how long he worked for USPS before transferring to Portland. Mr. Holman's salary is not included in the data provided by Defendant to Plaintiff because he was hired by USPS prior to 2013.

As to Elvan Childs, Plaintiff testified that she had transferred to Portland from Sacramento. Reder Depo. 59:4-25. According to Plaintiff, Ms. Childs was 44 years old, had worked for USPS for 10 months, and was given a starting salary of $93,000 a year. Id. Plaintiff also submits a chart showing that Ms. Childs was 45.7 years old, her salary was $93,072, her hire date was November 1, 2014, and she had a Master's degree. Solomon Decl. 17, ECF 19. The chart does not indicate when it was created or whether Ms. Child's age or salary reflects conditions at her hire date or when the chart was created.

11 – OPINION & ORDER

Finally, the only information the Court finds regarding Kevin Rivas is what was elicited from Mr. DeWolfe in his deposition.[2] Mr. DeWolfe testified that Mr. Rivas was hired around the same time as Plaintiff and Mr. DeWolfe believed that he was paid approximately $3,700 above the minimum salary. Solomon Decl. 8, ECF 20. Mr. DeWolfe later submitted a declaration which stated that he erred in his estimate regarding the $3,700 and that, instead, KR was paid $54,891, or $1,586 above the starting salary. Mr. DeWolfe testified that he did not believe that Mr. Rivas had more experience than Plaintiff. Id. Mr. DeWolfe also testified that Mr. Rivas was given a higher starting salary because of negotiations that took place before he was hired. Id.

The only individual that this Court considers a true comparator with Plaintiff is Mr. Rivas. Mr. Holman and Ms. Childs both transferred into Portland USPS, and too much is unknown about their prior experience, negotiations, or starting salary. On the other hand, Mr. Rivas was hired at about the same time as Plaintiff. Both Mr. Rivas and Plaintiff were offered the same starting salary; however, Mr. DeWolfe ended up hiring Mr. Rivas at a higher salary.

At the time of hire, Mr. Rivas was 47 and Plaintiff was 56. The Court questions whether Mr. Rivas' age and the age difference between Mr. Rivas and Plaintiff is enough to raise an inference of age discrimination. As the Supreme Court has explained, there is no requirement that Plaintiff's comparator be younger than 40 or a certain number of years younger than Plaintiff. O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996). However, an inference of age discrimination cannot be drawn from a comparator who is "insignificantly younger." Id. Nevertheless, because neither party raised this issue, the Court assumes that Plaintiff can establish a *prima facie* case of age discrimination because Plaintiff and Mr. Rivas were similarly situated, yet Mr. Rivas, who was younger, was treated more favorably.

---

[2] Based on all of the parties' submissions, the Court infers that the "KR" referred to by Mr. DeWolfe in his deposition is the same person as Kevin Rivas.

12 – OPINION & ORDER

## II.      Defendant's legitimate non-discriminatory reason

A *prima facie* case raises a rebuttable presumption that Defendant has violated the ADEA. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000). Here, Defendant offers a legitimate non-discriminatory reason for hiring Mr. Rivas at a higher starting salary than Plaintiff. Mr. DeWolfe testified that he offered the same starting salary to Plaintiff, DG, and Mr. Rivas. DG ultimately did not accept the job and Mr. Rivas negotiated for a higher salary based on a cost-of-living adjustment. DeWolfe Decl. ¶ 20. It is undisputed that Plaintiff did not negotiate with Mr. DeWolfe. Thus, it is legitimate for Defendant to say that Mr. Rivas' negotiation, not his age, led to a higher salary than that given to Plaintiff.

## III.     Pretext

The final stage of the McDonnell Douglas analysis requires Plaintiff to raise a genuine issue of fact concerning whether the facially legitimate reason proffered by Defendant is pretextual. Coleman, 232 F.3d at 1281. Plaintiff may demonstrate pretext "either directly by persuading the court that a discriminatory reason likely motivated [Defendant] or indirectly by showing that [Defendant's] proffered explanation is unworthy of credence." Diaz, 521 F.3d at 1212. At this point in the analysis, the "presumption of unlawful discrimination 'simply drops out of the picture.'" Coleman, 232 F.3d 1271, 1282 (quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994), as amended on denial of reh'g (July 14, 1994)).

Plaintiff argues that Defendant's justification for hiring Plaintiff at the salary he was offered is pretextual. Plaintiff contends that when Mr. DeWolfe told Plaintiff, "this is the salary we are offering," he foreclosed the possibility of negotiation and he did so because of Plaintiff's age. Plaintiff offers no additional evidence in support of his argument of pretext.

Although the Court is required to take the facts as alleged by Plaintiff and draw inferences from those facts in the light most favorable to Plaintiff, the Court fails to see how Mr. DeWolfe's statement raises an inference of discrimination. Plaintiff fails to raise an issue of fact to dispute Defendant's contention that Plaintiff was hired at the salary he was offered because he accepted that salary without attempting to negotiate for a higher salary. In other words, Plaintiff does not show a genuine dispute of material fact on whether Defendant's nondiscriminatory reason was pretextual. Thus, summary judgment is warranted.

## CONCLUSION

The Court grants Defendant's motion for summary judgment [12].

IT IS SO ORDERED.

Dated this \_\_\_5\_\_\_ day of \_\_\_Dec_____, 2016.

_____
MARCO A. HERNÁNDEZ
United States District Judge